UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
THE ANNUITY, PENSION, WELFARE, TRAINING
AND LABOR MANAGEMENT COOPERATION
TRUST FUNDS OF THE INTERNATIONAL UNION
OF OPERATING ENGINEERS, LOCAL 14-14B,
AFL-CIO, BY THEIR TRUSTEES EDWIN L.
CHRISTIAN, CHRISTOHER T. CONFREY, JOHN
CRONIN, JOSEPH BYRNE, KENNETH KLEMENS,
JR., JOHN F. O'HARE, WILLIAM TYSON, and        **REPORT AND**
MICHAEL SALGO, and INTERNATIONAL UNION    **RECOMMENDATION**
OF OPERATING ENGINEERS LOCAL 14-14B, AFL-CIO
BY ITS BUSINESS MANAGER EDWIN L. CHRISTIAN,    **20-CV-5893 (AMD)**

                                         Plaintiffs,

    -against-

MIDWEST REM ENTERPRISES, INC.,

                                         Defendant.
-------------------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

The Annuity, Pension, Welfare, Training and Labor Management Cooperation Trust Funds of the International Union of Operating Engineers, Local 14-14B, AFL-CIO (the "Local 14 Trust Funds"), by their trustees Edwin L. Christian, Christopher T. Confey, John Cronin, Joseph Byrne, Kenneth Klemens, Jr., John F. O'Hare, William Tyson, and Michael Salgo (the "Trustees"), together with the International Union of Operating Engineers Local 14-14B ("Local 14"), by its business manager Edwin L. Christian (collectively, "plaintiffs"), commenced this action on December 4, 2020, against Midwest REM Enterprises, Inc. ("defendant" or "Midwest REM"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq. See Complaint (Dec. 4, 2020) ("Compl."),

1

Electronic Case Filing ("ECF"), Docket Entry ("DE") #1. Plaintiffs seek an audit of Midwest REM's books and records, as well as contributions and payments determined to be due and owing pursuant to the resulting audit report. See id. *ad damnum* clause.

Currently pending before this Court, on a referral from the Honorable Roslynn R. Mauskopf (to whom the case was then assigned), is plaintiffs' motion for default judgment against Midwest REM. See Motion for Default Judgment (Feb. 22, 2021) ("Pl. Mot."), DE #9; Order Referring Motion (Feb. 23, 2021) ("Referral Order"). For the reasons explained below, the Court recommends that default judgment be entered on the First Cause of Action and that the District Court order defendant to produce its books and records for an audit by plaintiffs; the Court further recommends that plaintiffs' request for damages and fees be deferred until after a determination of the amount of contributions and payments due from Midwest REM.

## BACKGROUND

Local 14 is a labor organization under the LMRA, 29 U.S.C. § 152(5), with its principal place of business in Flushing, New York. Compl. ¶ 11. Edwin L. Christian is its Business Manager and Chief Executive Officer. Id. ¶ 12. The Local 14 Annuity and Pension Funds are employee pension benefit plans, see 29 U.S.C. § 1002(2), that provide retirement income to eligible participants, see Compl. ¶ 7. The Local 14 Welfare and Training Funds are employee welfare benefit plans, see 29 U.S.C. § 1002(1), that provide medical and skills improvement benefits to eligible participants, see Compl. ¶ 8. Together, the aforesaid Trust Funds constitute multiemployer/employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37), see Compl. ¶ 9, and

2

the Trustees of those Trust Funds are ERISA fiduciaries, see 29 U.S.C. § 1002(21); Compl. ¶ 5. The Local 14 Labor Management Cooperation Trust Fund is a labor management cooperation trust fund, as defined under the Labor-Management Cooperation Act of 1978, 29 U.S.C. § 186(c)(9), and section 501(c)(5) of the Internal Revenue Code, 26 U.S.C. § 501(c)(5), see Compl. ¶ 10, and the Trustees of that fund are fiduciaries within the meaning of section 501 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 501, see Compl. ¶ 6.

Midwest REM has its principal place of business in Melrose Park, Illinois, but is licensed to do business in the State of New York. See Compl. ¶¶ 13-15. Midwest REM is an employer under ERISA, 29 U.S.C. § 1002(5), and under Section 301 of the LMRA, 29 U.S.C. § 185(a). See Compl. ¶ 16.

Midwest REM entered into an independent signatory collective bargaining agreement ("CBA") with Local 14 on November 24, 2017. See id. ¶ 17; see also Collective Bargaining Agreement dated November 24, 2017 (the "CBA"), DE #11-2.[1] Pursuant to the CBA, Midwest REM acknowledged and agreed to be bound by certain Association Collective Bargaining Agreements ("Association CBAs"), and any successor Association CBAs, see CBA ¶ 6, between Local 14 and various associations, see Compl. ¶ 17; CBA ¶ 1; Affidavit of

---

[1] Another party to that CBA is Local 15, 15A, 15C and 15D of the International Union of Operating Engineers, AFL-CIO ("Local 15"). See CBA. On the same day that plaintiffs initiated the instant action, their attorney, representing Local 15 and trustees of various Local 15 trust funds, sued Midwest REM for failing to make required contributions or to submit to an audit. See The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds et al. v. Midwest REM Enterprises, Inc., 20cv5896 (KAM)(RLM) (the "Local 15 Midwest REM case"), DE #1. Judge Kiyo A. Matsumoto entered an order on July 6, 2021, holding Midwest REM in default and directing it to submit to an audit. See Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO, No. 20-cv-05896 (KAM), 2021 WL 2809794 (E.D.N.Y. July 6, 2021). Plaintiffs' counsel advised the Court in the case at bar that, as of July 15, 2021, and notwithstanding the judgment in the Local 15 Midwest REM case, Midwest REM still had not responded to a demand for an audit. See Status Report (July 15, 2021), DE #20.

3

Marlene Monterroso (Feb. 22, 2021) ("Monterroso Aff.") ¶ 3, DE #10. Midwest REM and Local 14 further agreed to be bound by the agreements and declarations of trust, amendments, and regulations thereto, as referenced in the applicable Association CBAs, and Midwest REM agreed "to remit all contributions" required under the Association CBAs. See CBA ¶ 4; Compl. ¶¶ 22, 24. As Midwest REM engages in "heavy construction," the applicable Association CBAs are those entered into by Local 14 and the General Contractors Association of New York, Inc. ("GCA"), see Monterroso Aff. ¶ 3, which agreements cover the period from July 1, 2014 through June 20, 2018, and from July 1, 2018 through June 30, 2020, see id.; GCA CBA (7/1/14 through 6/30/18), DE #11-3; GCA CBA (7/1/18 through 6/30/22), DE #11-4.[2]

By entering into the CBA, Midwest REM "agree[d] to be responsible for the payment of fringe benefit contributions through the purchase of stamps . . . ." CBA ¶ 5; see Monterroso Aff. ¶ 2. The stamps assist the Funds Manager in determining whether the payments received accurately reflect the amounts owed by Midwest REM on behalf of those individual employees represented by Local 14. See Monterroso Aff. ¶ 2. Pursuant to the terms of the GCA CBAs, Midwest REM, as an employer, is required to make contributions to the Annuity, Pension, Welfare, Training and Labor Management Cooperation Trust Funds, as well as payments to Local 14 for union dues and defense assessments, based on the number of hours worked by covered employees. See Compl. ¶¶ 18-19; GCA CBA, Art. XI-A, §§ 1-9,

---

[2] Here, as in the Local 15 Midwest REM case, the current GCA CBA submitted to the Court is unsigned. See Midwest REM, 2021 WL 2809794, at *4 n.3. Judge Matsumoto nevertheless concluded that even if that agreement was never executed, "an obligation to make plan contributions under ERISA is not dependent on a CBA signature." Id. (citing Brown v. C. Volante Corp., 194 F.3d 351, 355 (2d Cir. 1999)). As Judge Matsumoto concluded in the Local 15 Midwest REM case, "there is sufficient evidence to find an intention by Midwest REM to be bound" despite the absence of signature on the successor GCA CBA. See id. This Court concurs.

4

DE #11-3, #11-4. Midwest REM also committed to make its books and records available to a representative of plaintiffs to conduct an audit to determine whether Midwest REM had properly reported and paid the contribution amounts due to plaintiffs, as required pursuant to the Trust Agreements incorporated by reference into the CBA. See CBA ¶ 4; Compl. ¶¶ 20, 22-25; Monterroso Aff. ¶ 4; Trust Agreement for Annuity Fund, § 4.12, DE #11-5; Trust Agreement for Pension Fund, Art. VII, § 3, DE #11-6; Trust Agreement for Welfare Fund, Art. VII, § 3, DE #11-7; Trust Agreement for Training Fund, § 4.12, DE #11-8; Trust Agreement for Labor Management Fund, Art. 6, § 6.12, DE #11-9.

In the instant Complaint, plaintiffs allege that Midwest REM "may have underreported the number of employees, the amount of employee hours and wages paid to its employees[,]" and thus paid less than the required contributions and dues and defense fund assessments. See Compl. ¶ 26. According to the pleading, "[d]efendant has refused to produce [its books and records] and schedule an audit." Id. ¶ 27. The Complaint contains three causes of action: The First Cause of Action seeks an audit of defendant's books and records pursuant to Section 209(a)(1) of ERISA, 29 U.S.C. § 1059(a)(1), the applicable Trust Agreements, and the CBA. See Compl. ¶¶ 22-27. The Second Cause of Action alleges that Midwest REM breached the CBA by failing to make the contractually required contributions to the five Local 14 Trust Funds, and by failing to make contractually required payments to Local 14 for dues and defense fund assessments, see id. ¶¶ 29-32, "with the final amount owed [to the Local 14 Trust Funds and to Local 14] calculated after the completion of the audit requested in the First Cause of Action[,]" id. ¶ 32. The Third Cause of Action alleges that Midwest REM violated its obligations under Section 515 of ERISA, 29 U.S.C. § 1145, by failing to make the requisite

5

contributions to the Annuity, Pension, Welfare and Training Trust Funds, see Compl. ¶¶ 34-37, "with the final amount owed to be confirmed after the audit requested in the First Cause of Action is completed[,]" id. ¶ 35.

On January 25, 2021, Midwest REM was served with the Summons and Complaint through the New York Secretary of State. See Summons Returned Executed (Feb. 3, 2021), DE #6. Although duly served, Midwest REM failed to answer the Complaint or otherwise appear in this action. Accordingly, on February 22, 2021, the Clerk of the Court entered a notation of default, see Clerk's Entry of Default (Feb. 22, 2021), DE #8, and later that day, plaintiffs moved for default judgment, see Pl. Mot. Despite having been served with a copy of the motion, see Certificate of Service (Feb. 22, 2021), DE #13, Midwest REM never responded.

On February 23, 2021, Judge Mauskopf referred the motion for default judgment to the undersigned magistrate judge. See Referral Order. This Court thereafter issued an order directing plaintiffs to supplement their motion papers and ordering defendant to show cause, in writing, why plaintiffs' motion should not be granted. See Order to Show Cause (Apr. 15, 2021), DE #14. Plaintiffs timely supplemented their motion, see Affidavit of James M. Steinberg in Further Support of Plaintiffs' Motion for a Default Judgment (Apr. 23, 2021) ("Supp. Aff."), DE #16,[3] but Midwest Rem failed to respond.

---

[3] In their supplemental submission, plaintiffs acknowledged that the audit and contribution periods originally specified by plaintiffs — i.e., July 1, 2016 through October 31, 2020, see Compl. ¶ 27 — were in error: Inasmuch as Midwest REM did not enter into the CBA until November 24, 2017, the correct audit period and period for any delinquent contributions is November 24, 2017 through October 31, 2020, see Supp. Aff. ¶ 2.

DISCUSSION

**I.     Applicable Legal Standard – Default Judgment**

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.  See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b).  A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).  Nevertheless, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief.  See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)), adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").  Moreover, a fact is not "'well-pleaded' if it is inconsistent with other allegations of the complaint[,]" In re Indus. Diamonds Antitrust Litig., 119 F.Supp.2d 418, 420 (S.D.N.Y. 2000), or is "contrary to uncontroverted material in the file of the case," Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973) (internal quotation marks and citation omitted).

7

Although, in deciding motions for default judgment, courts assume the truth of the pleadings' well-pled facts as they relate to liability, the facts alleged in the pleadings are not assumed to be true in assessing plaintiffs' right to the relief requested. See Au Bon Pain, 653 F.2d at 65. In other words, even if the defendant is found to be liable, the defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages or equitable relief. See Greyhound Exhibitgroup, 973 F.2d at 158; S.E.C. v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975) (holding that a district court must, after finding a defendant in default, make factual findings regarding the appropriateness of injunctive relief). Instead, the relief requested must "be established by the plaintiff" with evidence, Greyhound Exhibitgroup, 973 F.2d at 158, and may not exceed what is "specified in the [complaint's] demand for judgment," Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007). In this regard, the Court may rely on "detailed affidavits and documentary evidence" and need not conduct an evidentiary hearing on the appropriateness of the relief requested. See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 39-40 (2d Cir. 1989).

## II.   Liability

As a preliminary matter, the Court concludes that given the current posture of the case, it would be premature to grant plaintiffs default judgment on their Second and Third Causes of Action (arising under the LMRA and ERISA respectively), which seek delinquent contributions and assessments. Although each of those claims asserts delinquencies "in the approximate amount of $100,000[,]" Compl. ¶¶ 29, 32, the pleading as a whole makes clear that this approximate amount is intended to serve as a placeholder, in the event that the audit requested in the First Cause of Action reveals that Midwest REM underreported the amounts due and owing, see id. ¶ 26 (alleging that Midwest REM "*may have* underreported the number of

8

employees, the amount of employee hours and wages paid to its employees") (emphasis added); see also id. ¶¶ 30-32, 35 (stating that "the final amount owed [would] be calculated after the completion of the audit requested in the First Cause of Action"). Indeed, the *ad damnum* clause in plaintiffs' Complaint does *not* seek $100,000 on the final two Causes of Action but instead, as to each, requests payments or contributions "determined to be due and owing pursuant to the report issued subsequent to the completion of the audit demanded in the First Cause of Action." Id. *ad damnum* clause.

Accordingly, because the pleading as drafted is equivocal as to whether any amounts are in fact due and owing from Midwest REM, this Court recommends that, for the reasons discussed below, the District Court grant plaintiffs default judgment on the First Cause of Action, with leave to amend the Complaint if and when it is determined, following an audit, that Midwest REM failed to remit any portion of the required contributions or payments. See Annuity, Pension, Welfare and Training Funds of Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO v. Heritage Steel Corp., No. 07-CV-4294 (FB), 2008 WL 4222522, at *2 (E.D.N.Y. Sept. 11, 2008) (concluding that "it is premature to order [monetary] relief, as the audit has not been conducted and a determination cannot be made as to whether any contributions are due and, if so, in what amounts").

### A. ERISA

Citing Section 209(a)(1) of ERISA, 29 U.S.C. § 1059(a)(1), plaintiffs' First Cause of Action demands an audit of Midwest REM's books and records, which defendant has refused to provide. See Compl. ¶ 27. ERISA requires an employer to "maintain records with respect to each of his employees sufficient to determine the benefits due[,]" 29 U.S.C. § 1059(a)(1),

9

and to make records "available for examination[,]" id. § 1027. In addition, Midwest REM is required by the CBA to comply with requirements in the applicable trust agreements, including submitting its books and records for audit.

Plan fiduciaries may bring civil actions under ERISA to enforce the provisions of such plans and/or collective bargaining agreements. See id. § 1132(a)(3). As noted earlier, the Trustees are plan fiduciaries as defined by ERISA, 29 U.S.C. § 1002(21), see Compl. ¶ 5, Midwest REM is an "employer" within the meaning of ERISA, 29 U.S.C. § 1002(5), see Compl. ¶ 16, and the first four Local 14 Trust Funds are "plans" within the meanings of Sections 3(1), 3(2), 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(1), (2), (3), (37), see Compl. ¶¶ 7-9. The Complaint's First Cause of Action's audit demand therefore states a claim under ERISA.

B.  LMRA

With respect to the pleading's allegations relating to union dues and defense fund payments, and the Labor Management Cooperation Trust Fund, which are not governed by ERISA, plaintiffs must sufficiently plead a claim for an audit under the LMRA, which provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a). An employer's breach of a collective bargaining agreement and/or trust agreement, e.g., by failing to comply with an audit request, is actionable under the LMRA. See Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO v. NAMOW, Inc., No. 17-CV-1469-ARR-SJB, 2018 WL 1440545, at *4 (E.D.N.Y. Feb. 28, 2018), adopted, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018); Annuity,

10

Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Bar-Mac Constr., Inc., No. 16-CV-1661 (ENV)(PK), 2017 WL 9511070, at *3 (E.D.N.Y. Mar. 13, 2017), adopted, 2017 WL 1390668 (E.D.N.Y. Apr. 18, 2017). By alleging that Midwest REM failed to meet the requirements imposed by the trust agreements, which are incorporated into the CBA and to which Midwest REM agreed to be bound, plaintiffs have sufficiently stated a claim under the LMRA. See NAMOW, 2018 WL 1440545, at *4; Bar-Mac Constr., 2017 WL 9511070, at *3.

**III.   Relief Requested**

In an action for unpaid contributions brought under section 1145 of ERISA, a court may, in addition to monetary damages, award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). "That relief may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO v. Lori Contracting, Inc., No. CV 2014-2467(RJD)(MDG), 2015 WL 1321672, at *3 (E.D.N.Y. Mar. 5, 2015) (internal quotation marks and citations omitted), adopted, 2015 WL 1359072 (E.D.N.Y. Mar. 24, 2015); Ferrara v. Pomarc Indus., Inc., No. 11-CV-1859 (RRM)(MDG), 2013 WL 3990746, at *4 (E.D.N.Y. Aug. 5, 2013); see Sullivan v. Marble Unique Corp., No. 10 CV 3582(NGG)(LB), 2011 WL 5401987, at *13-14 (E.D.N.Y. Aug. 30, 2011), adopted, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011). "Likewise, pursuant to the LMRA, courts may enforce a union's contractual right to audit an employer's books and records." Annuity,

Welfare, and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO v. Getty Contracting, LLC, No. 18-CV-1450 (CBA), 2018 WL 7076168, at *4 (E.D.N.Y. Oct. 5, 2018), adopted, 2018 WL 7076162 (E.D.N.Y. Dec. 12, 2018) (citations omitted); see also Mason Tenders Dist. Council of Greater N.Y. v. Concore Equip. Inc., No. 10 Civ. 4227(RWS), 2013 WL 5303756, at *4-5 (S.D.N.Y. Sept. 20, 2013), aff'd sub nom. Virga v. Concore Equip., Inc., 600 F.App'x 785 (2d Cir. 2015).

Plaintiffs have the right pursuant to the CBA and applicable trust agreements to audit Midwest REM's books and records. See Trs. of the Sheet Metal Workers' Nat'l Pension Fund v. Steel & Duct Fabrication, Inc., 124 F.Supp.3d 187, 196-99 (E.D.N.Y. 2015); Lori Contracting, 2015 WL 1321672, at *3; Heritage Steel, 2008 WL 4222522, at *2; see also Cent. States, Se. & Sw. Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 581-82 (1985). Midwest REM failed to comply with plaintiffs' demand for an audit. See Compl. ¶ 27. As plaintiffs have established their entitlement to an audit, this Court recommends that Midwest REM be directed to submit to such an audit for the period November 24, 2017 through October 31, 2020[4] and to produce payroll records, including Tax Forms 941, quarterly payroll tax forms (NYS-45), corporate payroll records, cash disbursement records, W-2 tax forms, payroll reports and cancelled checks. See Amended Proposed Judgment (Apr. 23, 2021) ¶ 1, DE #15-1.

Plaintiffs further request that if a deficiency is found to be due as a result of the audit, they be afforded the opportunity to seek additional monetary relief. See id. ¶ 2. This Court

---

[4] See *supra* note 3.

recommends that this request be granted and plaintiffs be permitted to move to reopen this case, following an audit, to amend the Complaint (if appropriate) and to seek an amended judgment against Midwest REM for any deficiency and related damages. See Getty Contracting, 2018 WL 7076168, at *4; Lori Contracting, 2015 WL 1321672, at *3; Marble Unique, 2011 WL 5401987, at *14-15; Heritage Steel, 2008 WL 4222522, at *2.

The Court further recommends that plaintiffs' request for fees and costs be denied without prejudice to renewal thereof upon the completion of the audit and any ensuing inquest proceeding. See Getty Contracting, 2018 WL 7076761, at *4; Heritage Steel, 2008 WL 4222522, at *2.

## CONCLUSION

For the foregoing reasons, this Court recommends that a default judgment be entered on the First Cause of Action and that Midwest REM be directed to promptly submit to an audit for the period November 24, 2017 through October 31, 2020, and produce payroll records, including Tax Forms 941, quarterly payroll tax forms (NYS-45), corporate payroll records, cash disbursement records, W-2 tax forms, payroll reports and cancelled checks.  This Court further recommends that plaintiffs be permitted to move to reopen this case following an audit to seek an amended judgment against Midwest REM for any deficiency and related damages. Finally, this Court recommends that plaintiffs' request for fees and costs be denied without prejudice to renewal thereof upon the completion of the audit and any ensuing inquest proceeding.

Any objections to the recommendations contained herein must be filed with the Honorable Ann M. Donnelly on or before September 20, 2021.   Failure to file objections in a

timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is requested to enter this Report and Recommendation into the ECF system and to transmit copies to Midwest REM at the following address:

>  2601 West Le Moyne Street
>  Melrose Park, ILL. 60160

**SO ORDERED.**

**Dated:   Brooklyn, New York
          September 1, 2021**

/s/ *Roanne L. Mann*
_____
**ROANNE L. MANN
UNITED STATES CHIEF MAGISTRATE JUDGE**